SOUTHERN RAILWAY COMPANY ET AL. *v.* LIMBACK.

[No. 21,034. Filed July 2, 1908. Rehearing denied March 31, 1909.]

1. PLEADING.— *Complaint.— Railroads.—Negligence.—Contributory.* —A complaint alleging that the plaintiff brakeman was ordered by his conductor to stay with the caboose and not to leave it, that defendant railroad company promulgated a rule requiring that the rear end of trains at the place where plaintiff's train was standing, should never be left without a man in charge thereof, that while plaintiff was working in his caboose, the defendant engineer negligently ran into such caboose, injuring plaintiff, makes the conductor's order a material issuable fact. p. 94.

2. TRIAL.—*Instructions.—Assuming Facts.—Invasion of Province of Jury.*—An instruction that the evidence shows without conflict that the conductor of the train told the plaintiff, a brakeman, to "stay with his caboose, and not to leave it," invades the province of the jury, where the testimony of the brakeman was that the conductor ordered him to stay with the "caboose," and of the conductor, that he ordered the brakeman to stay with the "rear end of the train, and not to leave it." p. 94.

3. EVIDENCE.—*Staying with "Caboose."—Staying with "Rear End of Train."—Conflict.*—Testimony by a brakeman that the conductor ordered him to stay with his "caboose," and by the con-

ductor that he ordered the brakeman to stay with the "rear end of his train," and not to leave it, is conflicting, the former being open to the interpretation that the brakeman was "properly on the inside of the caboose," and the latter, that "plaintiff was to remain on the outside of the caboose." p. 94.

4. TRIAL.—*Instructions.*—*Assuming Facts in Issue.*—Unless facts in issue are conceded by the parties, the court cannot, in the instructions, assume such facts as proved. p. 95.

5. TRIAL.— *Evidence.*— *Conflict.*— *Question for Jury.*— Whether there is a conflict in the evidence on a point in issue, is a question for the jury. p. 95.

6. TRIAL.—*Credibility of Witnesses.*—*Question for Jury.*—*Rejecting Evidence.*—The jury is the sole judge of the credibility of the witnesses, and it may determine the weight to be given to their testimony, and may reject testimony considered unworthy of belief. p. 95.

7. TRIAL.—*Instructions.*—*Invasion of Province of Jury.*—*Appeal.*— An instruction assuming the existence of a controverted fact is erroneous. p. 96.

8. ACTION.— *Prosecution of.*— *Poor Persons.*— *Costs.*— *Bonds.*—A person who is permitted to prosecute an action as a poor person, cannot be required to give a bond for costs. p. 96.

9. ACTION.— *Nonresidents.*— *Costs.*— *Bonds.*— *Poor Persons.*— A nonresident admitted by the court to prosecute an action as a poor person, is not required to give a bond for costs. p. 96.

From Dubois Circuit Court; *E. A. Ely,* Judge.

Action by Frank Limback against the Southern Railway Company and another. From a judgment for plaintiff, defendants appeal. *Reversed.*

*A. P. Humphrey, J. D. Welman, R. M. Milburn* and *M. W. Fields,* for appellants.

*R. W. Armstrong, W. E. Cox* and *Sol. H. Esarey,* for appellee.

JORDAN, J.—This action was commenced by appellee against appellant railway company and its coäppellant, Robert Conner, to recover damages for personal injuries sustained by appellee on September 14, 1904, while in the employ of the company as a flagman or rear brakeman on one of its freight-trains. The action is based upon section one of the employers' liability act (§8017 Burns 1908, Acts 1893, p.

294), the material part of which is as follows: "Every rail-
road * * * operating in this State, shall be liable for
damages for personal injury suffered by any employe while
in its service, the employe so injured being in the exercise of
due care and diligence, in the following cases: * * *
Fourth. Where such injury was caused by the negligence
of any person in the service of such corporation who has
charge of any * * * locomotive engine or train upon a
railway." The complaint upon which the cause was tried
alleges that the defendant railway company was a corpora-
tion duly organized, and owning and operating a line of
steam railroad extending from New Albany, Indiana, west
across said State and the state of Illinois to the city of St.
Louis; that said railway, in its course through Indiana,
passes through the counties of Floyd and Dubois; that eight
miles west of the city of New Albany the defendant railway
company kept and maintained a station known as "Dun-
can," at which all trains going east on defendant's line were
required to stop; that on May 27, 1904, a special rule was
promulgated by defendant company requiring that at said
station of Duncan the rear end of a train should never be
left without a man in charge; that plaintiff was a flagman
on an extra freight-train; that Henry T. Morgan, as con-
ductor of said train, had control thereof, and full authority
and power to direct all of appellant's employes upon said
train, including this plaintiff; that on September 14, 1904,
while *en route* east over appellant's said road, said train was
stopped at said station of Duncan, and plaintiff was ordered
by conductor Morgan to "stay with the caboose attached to
the rear end of the train, and not to leave it;" that defend-
ant Robert Conner was an employe of said railway company
and as such had charge and control of one of its locomotive
engines attached to said train, which was run and operated
as No. 640; that this train was run east over and upon de-
fendant's line of railway from Princeton, Indiana, to the

city of New Albany, and on the occasion in question was following the train upon which plaintiff and said Henry T. Morgan were at work in their respective positions; that the injuries received by plaintiff were occasioned by said freight-train, the locomotive engine of which was in charge of Conner, colliding with the caboose attached to the train on which plaintiff was at work, and in which he was at the time of the accident; that the negligence, which resulted in said collision, is imputed to Conner, the engineer in charge of the engine of the colliding train.

A demurrer to the complaint was overruled, and defendants answered by the general denial. Trial by jury, and verdict for $10,500 in favor of plaintiff against both of the defendants. Along with this general verdict answers to a series of interrogatories were returned. Defendants jointly and severally moved for judgment on these answers. This motion was overruled. They then jointly and severally moved for a new trial for various reasons assigned. This motion was denied, and judgment was rendered on the verdict. Defendants appeal, and have jointly and severally assigned errors. The errors in the main relied upon for a reversal of the judgment are predicated upon the motion for judgment upon the interrogatories and the motion for a new trial. Among the grounds urged for reversal is that the verdict of the jury is not sustained by sufficient evidence. It is insisted that the evidence discloses that plaintiff was guilty of contributory negligence. The evidence shows that on September 14, 1905, plaintiff was in the employ of defendant company as a flagman on one of its freight-trains. This train on that date was running east, and was stopped at Duncan, Floyd county, Indiana. It was composed of twenty-three cars, an engine and a caboose, and was followed by another freight-train consisting of twenty cars, a locomotive engine and a caboose, which was in charge of appellant Conner, the engineer thereof. The accident in question oc-

curred about 2 o'clock in the morning of the latter date. At the time of the occurrence of the accident it was raining, and was quite dark. Conner's train collided with the caboose of plaintiff's train. At the time of the collision the latter train had been standing for about an hour on the main track at said station of Duncan, and was in charge of conductor Henry T. Morgan. At the time of the collision plaintiff was in the caboose, engaged in cleaning it, and was severely injured by the collision. He testified that, when his train stopped at Duncan, conductor Morgan ordered him to stay with his caboose. There is evidence to show that, at the time plaintiff's train stopped at Duncan, he knew there was a freight-train following his train. The contention of defendant railway company appears to have been that, according to the rules of the company, plaintiff was not, at the time he was injured, in the place where he should have been; that it was his duty to be on guard on the outside of the caboose, in order that he might flag the freight which was following his train; that, when his train was left standing on the main track at Duncan, the rules of the company required him to go beyond the rear of his train for the distance of at least eighteen telegraph poles and place torpedoes on the rail, etc.; that had he been on the outside of the caboose, as required, he would have escaped all injury. In fact, the jury found in the answers to the interrogatories that had plaintiff been on the ground, outside of his caboose, when Conner's engine approached the station of Duncan, he could have seen the headlight of said engine and heard the train coming in time to avoid the injury to himself. Plaintiff, however, attempted to justify his act in being in the caboose at the time he was injured by testifying that, when the train stopped at Duncan, the conductor ordered him to stay with the caboose; that he was required to obey this order of the conductor, and he attempted to show that the rules in controversy had been superseded by a custom of appellant.

It will be noted that it was averred in the complaint that plaintiff was ordered by his conductor to stay with the caboose attached to the train, and not to leave it. Under the complaint the order of the conductor in question was made a material issuable fact, and one upon which plaintiff, under the evidence, appears to have relied to authorize his being in the caboose at the time of the collision, instead of upon the outside, on the look out for the train which was following.

The trial court, on its own motion, gave to the jury the following instruction: "The evidence shows without conflict that at the time the plaintiff was injured he was in the employ of the defendant Southern Railway Company as brakeman on extra train No. 638; that Henry T. Morgan, as conductor, was in charge of said train; that upon arriving at Duncan it stopped upon the main track, and said conductor *ordered the plaintiff to stay with his caboose, and not to leave it.* It was the duty of the plaintiff to obey such order, and he would not be required to go back and flag coming trains, or to see that others did it, whether the rules requiring the same were in force or superseded by a custom to the contrary, and his failure to go back, or have some one else to go back, and flag coming trains would not constitute such negligence as would prevent him from recovering if he is otherwise entitled to recover." (Our italics.)

Plaintiff testified at the trial that, when his train stopped at the station of Duncan, Morgan, the conductor thereof, said to him: "Frank, stay with your caboose." This was the order in controversy, and the one referred to in charge number two. It will be observed that the court, in this instruction, enlarged upon the testimony of appellee by adding thereto, after the word "caboose," the words "and not to leave it." The conductor testified that he directed appellee to stay with the rear end

of his train, and not to leave it.   In reason it can be asserted that there is a conflict between the evidence given by appellee that he was ordered by the conductor to stay with the caboose and that given by the conductor, that he directed him to stay with the rear end of the train.   The statements of the two witnesses possibly may be open to different interpretations; the one justifying the claim of appellee that at the time he was injured he was, under the order of the conductor, properly on the inside of the caboose, while, upon the other hand, there is room for the claim that the direction given by Morgan, as testified to by him, "to stay with the rear end of the train," meant that plaintiff was to remain on the outside of the caboose, and did not warrant him in remaining upon the inside.

We believe that it may also be said that inferences may be properly drawn from facts proved by other evidence given by Morgan, which inferences conflict with the testimony of appellee that he was ordered to stay with his caboose.

We fully agree with counsel for appellants that the court, by this instruction, encroached upon the domain of the jury.   The case had been submitted for trial to the jurors, and they were the triers of all issuable facts, and, unless conceded by both parties, it was not the province of the trial court to declare to the jury that there was no conflict in the evidence upon the particular point in issue.   As to whether there was a conflict in any respect in the evidence was a question to be determined by the jury and not by the court.   The jury's decision of the fact in issue involved the credibility of the witnesses and of all legitimate inferences to be drawn from facts proved in the case upon the particular point.   The jurors were the exclusive judges of the credibility of the witnesses, and it was their province to determine all issues of fact, including such credibility, and also the weight to be accorded to their testimony.   If warranted

under the evidence, they had the right to disbelieve and reject the evidence of appellee and Morgan in respect to the order in question.

It is a well-settled proposition of law that, in a case in which the evidence is close or conflicting, an instruction to the jury which assumes the existence of a controverted
7.  fact or facts is erroneous. *Koerner* v. *State* (1884), 98 Ind. 7, and authorities cited on page 13 of the opinion; Hughes, Instructions to Juries, §§192, 193.

That the court, by the instruction in controversy, usurped the functions of the jury or invaded its province, to the prejudice of appellants, is also fully sustained by the following cases: *Abbitt* v. *Lake Erie, etc., R. Co.* (1898), 150 Ind. 498; *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155; *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32; *Deitrich* v. *Hutchinson* (1886), 20 Neb. 52, 29 N. W. 247; 6 Current Law, p. 43, and authorities there cited.

The contention of appellee, that the error of the court in giving the charge in controversy was invited by appellants' tendering and requesting the court to give a certain instruction, which request was refused, is not sustained. It appears that appellee was, by order of the court, under §261 Burns 1908, §260 R. S. 1881, permitted to prosecute this action as a poor person, consequently appellants' motion to require him to file a cost bond and
8.  thereby secure the cost, as required by §616 Burns 1908, §589 R. S. 1881, was properly overruled. So long as the order of the court authorizing him to prosecute as a poor person remained in force he was not liable for costs, and was exempt from complying with the requirements of §616, *supra. Wright* v. *McLarinan* (1883), 92 Ind. 103.

A nonresident of this State may be admitted by the court to prosecute an action as a poor person, and in such a
9.  case, so long as the order of the court remains in force, he cannot be required to give security for costs. *Fuller & Fuller Co.* v. *Mehl* (1893), 134 Ind. 60.

Other alleged errors, predicated on the court's giving and refusing certain instructions, are discussed by appellants' counsel. These questions, however, we pass without consideration. For the error of the court in giving instruction two the judgment is reversed, and a new trial ordered.