## BALDWIN ET AL. *v.* SIDDONS ET AL.

[No. 6,722. Filed February 25, 1910. Rehearing denied July 1, 1910.]

1. VENDOR AND PURCHASER.—*Options.*—*Election.*—*Failure to Exercise.*—*Effect as to Third Persons.*—Where purchasers secure an option upon a tract of land, upon certain conditions, a breach of any one of which operates as a forfeiture of the purchasers' rights, and the vendor, upon a breach of the conditions, fails to exercise his right of forfeiture, the vendee of the purchasers cannot, because of such provision for forfeiture, raise the question of such purchasers' right to sell the land. p. 315.

2. VENDOR AND PURCHASER.—*Liens.*—*Title Bond.*—*Option.*—One holding an option upon a tract of land has the right to sell such land, and is entitled to enforce a vendor's lien for the purchase money. p. 316.

3. EVIDENCE.—*Admissions of Agent.*—*Authority.*—The admissions of an agent are not admissible in evidence until his agency is established. p. 317.

4. VENDOR AND PURCHASER.—*Liens.*—*Equity.*—In a suit by the holders of a title bond to certain real estate, against their vendees who, at the direction of such holders, obtained a deed direct from the owner, the land being worth $2,000, and the amount paid to the owner being $506, equity requires very clear proof

of defendant's rights, where they attempt upon technical grounds to avoid payment of the balance.    p. 317.

5. APPEAL.—*Changing Theory of Case.*—Appellants cannot change the theory of their case on appeal.    p. 318.

6. EVIDENCE. — *Complaint. — Unauthorized Averments. — Attorney and Client.*—Where an attorney under a misapprehension of the facts inserted certain unauthorized and untrue allegations in a complaint, such complaint has no probative force as an admission of the plaintiff.    p. 318.

7. APPEAL.—*Weighing Evidence.*—A determination by the Appellate Court that there is no evidence supporting a certain allegation does not constitute a weighing of the evidence.    p. 320.

From Madison Circuit Court; *John F. McClure*, Judge.

Suit by Mary L. Baldwin and another against Walter E. Siddons and others. From a judgment for defendants, plaintiffs appeal.    *Reversed.*

*Lovett & Slaymaker, Manly & Stricler* and *Brownlee & Browne*, for appellants.

*Meade S. Hays, Marcellus A. Chipman, Sanford M. Keltner* and *Edgar E. Hendee*, for appellees.

HADLEY, J.—Appellants brought this suit against appellees to declare and foreclose a vendor's lien upon certain real estate in Grant county.   It is averred in the complaint that on August 3, 1897, Jesse D. Wright was the owner in fee simple of said real estate, and that on said date he executed to appellants a title bond, wherein he agreed to convey said real estate to appellants upon their making the payments provided for in said bond; that appellants paid, as part of the purchase price of said real estate, $50, and gave their notes for the balance in the sum of $450, and that appellants then took possession of said land, occupied it and paid the taxes on it until November 2, 1900; that some time prior to November 2, appellees Siddons and Siddons entered into an agreement with appellants, whereby they were to pay to appellants the sum of $2,000 for said land, $500 of which, or an amount sufficient to satisfy the claim of Wright, was to be paid at once to Wright, for the purpose of fulfill-

ing the terms of the bond and procuring a deed from said Wright, the remainder of said sum to be paid when an ice plant, to be erected by said appellees on said land, was completed and in operation; that at the same time it was agreed by appellants that they would give to appellees the right to use a flowing well belonging to appellants, located on an adjoining tract of ground; that for this right appellees were to pay $500; that, in pursuance of this agreement, which was oral, appellants assigned their title bond to appellees, and also orally informed Wright of said agreement, and procured said Wright and wife to execute and deliver a deed conveying said tract to appellees Siddons and Siddons, said Siddons and Siddons paying the sum of $506 to said Wright, as agreed upon; that thereupon said Siddons and Siddons took possession of said land and still hold it; that said ice factory was completed and in operation June 1, 1901, and thereafter appellants frequently demanded payment of the remainder of said purchase price for said land, which payment had been refused. Prayer for judgment for balance due and for the foreclosure of a vendor's lien.

The title bond of Wright to appellants contained the provision that upon the full payment of said purchase money with interest, as it should fall due, and the perform-

1. ance of all their agreements in said instrument, said Wright would convey, by warranty deed, said real estate to appellants. It also provided that in the payments time was the essence of the contract, and the failure to pay any instalment with interest at or before the time it fell due, or to perform any other undertaking within thirty days after it became due, should, at the election of said Wright, forfeit said contract and release said Wright from any and all obligations growing out of the contract, and all payments made by appellants for improvements should be forfeited and held by said Wright as liquidated damages. There was ample evidence adduced by appellants to sustain all of the averments of the complaint. It was also shown

by undisputed evidence that appellants were in default in two of their payments of principal and interest of the instalments under said bond, but it was also shown by undisputed evidence and by the testimony of Wright himself that he had never exercised his election to forfeit said bond, but, on the contrary, had received interest thereon after default, and was at all times, even after default, ready and willing to comply with its terms upon the receipt of the money therein provided for, and had made the deed to appellees upon the request of appellants. Appellees insist that, under this state of facts, appellants had forfeited their rights under the bond, and had no enforceable interest in the land and therefore nothing to sell, and hence have no right to recover purchase money therefor. We cannot sustain this contention of appellee. Appellants were in undisputed possession of the land, and the forfeiture described in the bond was at the election of Wright, and so long as he waived or refused to exercise this right appellants could require the performance of the stipulation of the bond upon compliance, or tender of compliance, with its terms. 29 Am. and Eng. Ency. Law (2d ed.) 682-685; *Spath* v. *Hankins* (1876), 55 Ind. 155; *Delaney* v. *Shipp* (1905), 34 Ind. App. 456; *Bellamy* v. *Ragsdale* (1853), 14 B. Mon. (Ky.) 364; *Cook* v. *Wardens, etc.* (1876), 67 N. Y. 594; *Robinson* v. *Trufant* (1893), 97 Mich. 410, 56 N. W. 769; *Iglehart* v. *Gibson* (1870), 56 Ill. 81; *Baker* v. *Bishop Hill Colony* (1867), 45 Ill. 264.

The interest thus held by appellants was the subject of sale, and under the averments of the complaint they were entitled to a vendor's lien to enforce payment of the purchase price therefor. *Brumfield* v. *Palmer* (1844), 7 Blackf. 227; *Barrett* v. *Lewis* (1886), 106 Ind. 120; *Smith* v. *Mills* (1896), 145 Ind. 334; *Dwenger* v. *Branigan* (1884), 95 Ind. 221; *Fleece* v. *O'Rear* (1882), 83 Ind. 200.

Upon the trial, appellees, in defense, sought to prove that.

they purchased the land in question from Wright for the sum of $506, under an agreement with Lewis J. Baldwin, son of appellants, whereby said Lewis agreed to convey said land, said well and certain personal property consisting of horses, wagons, tools, etc., together with $1,000 in money, in consideration of thirty shares of the capital stock of appellee company. It was conceded by appellees that all of these negotiations were had with Lewis J. Baldwin in the absence of appellants; that Lewis J. Baldwin was unable to pay the claim of Wright, and at his request appellees paid said sum of $506 and took the deed thereto, but never gave Lewis J. Baldwin any stock therefor. It is insisted by appellants that the testimony of conversations introduced to show this contract with Lewis J. Baldwin was inadmissible, for the reason that it was not shown that said Lewis J. Baldwin was authorized by appellants to make any such contract or representations, or that they had any knowledge that such contract or representations had been entered into or made. We have read carefully the record of the evidence, and from it we must sustain the contention of appellants in this regard. We find no direct evidence of such authority, or any evidence from which it might reasonably be inferred that Lewis J. Baldwin was authorized by appellants either to act for them or to bind them in any way, or that appellees were justified in believing that he had such authority. This being true, the evidence was wholly incompetent, and should not have been admitted.

The position of appellees Siddons and Siddons does not appeal to the conscience of a court of equity. It is perfectly clear that they had knowledge of the interest of appellants in said land before they procured the deed from Wright. The evidence is undisputed that they knew that appellants were in possession of the land, and had been for some time; that they claimed to own it and had a title bond for it. They also knew, under their own state-

ments, that appellants were getting nothing for their interest. They do not claim that they issued any stock to Lewis J. Baldwin for it, nor that they paid more than $506 for the land, which the undisputed evidence shows was reasonably worth $2,000. They seek to avoid payment upon technical legal grounds. Standing thus, they should be held to a strict proof of their rights.

Appellants insist that they were entitled to recover on the theory of *quantum meruit*. It is apparent from the record that no such theory was advanced in the court below, appellants specifically disowning any such theory. It therefore cannot be made to avail them in this court. *West* v. *State, ex rel.* (1907), 168 Ind. 77.

·Judgment reversed with instructions to grant a new trial, and other proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING.

HADLEY, J.—Appellees, in their petition for a rehearing, insist that this court did not properly consider the averments of what they term the original complaint, and which was introduced in evidence by appellees. This complaint substantially averred that appellant Mary L. Baldwin was the owner of the land in question and also a flowing well adjoining; that on November 2, 1900, she sold said land to appellees and caused it to be conveyed to them, together with the right to use said well, said land and said well being of the value of $3,500; that Lewis J. Baldwin was the owner of personal property of the value of $1,000; that at that time it was agreed between said appellees Siddons and Siddons and said Lewis J. Baldwin that if Mary L. Baldwin would convey said land to Siddons and Siddons and permit them to use the water from said well, they (appellees) would erect an ice plant thereon and proceed to manufacture ice; that they would incorporate said company and issue to appellant Mary L. Baldwin and said Lewis J. Baldwin the

equal one-third of the stock thereof; that after said conveyance by said appellant, said Siddons and Siddons did incorporate, and did erect the plant and begin the operation thereof, but issued all of said stock to appellees Siddons and Siddons, and refused to issue any to said appellant; that appellees have purchased the interest of Lewis J. Baldwin in said plant, and he has no interest in said suit. Prayer for damages in the sum of $3,000.

It was shown by uncontradicted testimony that appellant Mary L. Baldwin had never stated to her attorneys that she and Lewis were jointly interested in the transaction, and that she had made no statements to her attorneys that would warrant them or either of them in averring in her complaint any fact from which such joint interest could be inferred; that this complaint was drawn and filed by an attorney who had never talked with Mary L. Baldwin about the matter; that his information, upon which he based the complaint, was derived from notes made by his partner who had been employed by Mary L. Baldwin and Lewis J. Baldwin to prosecute a suit for each of them; that Mary L. Baldwin and Lewis J. Baldwin had stated their causes of action to their attorney at the same time, and he had made notes of their statements on the same pad, and had rolled the notes up together and placed them in his desk, and from these conglomerate notes the attorney, in the absence of his partner who had made them, drew the complaint and filed it, without submitting it to either of appellants.

It was also shown, without contradiction, that as soon as Mary L. Baldwin heard the allegations of the complaint she denied them, and declared that she had never made any statements which tended to show that she and Lewis J. Baldwin were in any way jointly interested; that she had sold her land to Siddons and Siddons, and she wanted a suit brought to recover her money; that soon thereafter an amended complaint was filed, substantially the same as the complaint upon which the case was tried. Thereafter, it

having been discovered that Mary L. Baldwin and her hus-
band, William Baldwin, were the owners of the interest in
said land as tenants by the entireties, a second amended com-
plaint was filed, naming William Baldwin party plaintiff
with Mary L. Baldwin. Under these circumstances we do
not think the averments of the complaint, standing alone as
they do in this case, are sufficient to furnish any proof that
Lewis J. Baldwin was the agent of appellants in the sale of
appellants' land to appellees. We have in no sense
7. weighed the evidence. If we were permitted to do
so, the decision would be attended with little diffi-
culty.

Appellees have challenged other statements as to facts, as
set out in the opinion. We have reëxamined the record care-
fully, and find that in each instance appellees' positive
statements are found to be incorrect and not sustained by
the record, except the first, which was a clerical error, clearly
apparent as such, and has been corrected in the opinion.

Petition for a rehearing denied.


## Dissenting Opinion.

RABB, J.—This suit was brought by appellants to re-
cover the purchase price of land alleged to have been sold by
them to appellees, and to enforce a vendor's lien thereon.
It appears that appellants were in possession of the premises
under a written contract for the sale thereof .to them by
Jesse D. Wright, who held the legal title thereto, and by the
terms of the contract was bound to execute a deed therefor
to appellants or their assigns, on the payment of the pur-
chase price as therein stipulated.

The original complaint in the case was filed on Septem-
ber 2, 1904. This was superseded by an amended complaint,
filed December 19, 1904. Issues were formed and the cause
tried on this amended complaint. The amended complaint
charges that an oral contract for the sale of the premises

was entered into between the parties, by the terms of which appellants were to surrender to appellees the possession of the premises, and to cause said Wright to convey the premises to them by a proper deed, in consideration of which appellees were to pay appellants $2,000, of which amount $500 was to be paid to said Wright in performance of the contract of sale between appellants and Wright. It is alleged that this contract was executed on appellants' part by putting appellees in possession of the premises, and causing Wright to make a deed to them therefor, and that appellees failed and refused to comply with the terms on their part, except as to the payment of the $500 to Wright.

To sustain this complaint, appellants testified that upon a certain occasion in October, 1900, the parties made an oral contract, as charged in the complaint; that no note or other evidence of the indebtedness created by the transaction from appellees to appellants was executed, but that appellees orally promised to pay to appellants the remainder of the $200 as soon as they should have completed an ice factory upon the premises; that the ice factory was completed and in operation in June or July following; that to carry out the terms of the contract, at the request of appellees, appellants indorsed on the written contract of sale which they held from Wright an assignment thereof to the Crystal Ice and Cold Storage Company, and delivered it to appellee Crystal Ice and Cold Storage Company, the corporation which appellees and Lewis J. Baldwin organized to carry on the ice business.

Appellants' witness Wright testifies that the written contract referred to, with this assignment on it, was presented to him by appellee William Siddons, the balance due to him on the purchase price of the premises was paid to him by appellees, and that he thereupon took up the contract and executed a deed for the premises to appellees, and at the same time surrendered to them the notes which he held

against appellants, evidencing the indebtedness due from them to him on account of the land.

Appellees testify that they made no contract of any kind with appellants for the purchase of the premises in question. They admitted taking the title thereto from Wright, and were permitted to detail the circumstances under which the title was so taken by them. According to their testimony, appellant Baldwin's son, Lewis, proposed that if appellees would organize a corporation to carry on the ice business, he would put into the company the land here in question, in which his father and mother held the interest as before set out, a certain other tract of land, $1,000 in money, and certain personal property, and would procure from appellants the right to use the water from a certain flowing well owned by appellants, for which he was to have a certain number of shares of stock in the company to be formed; that the corporation was formed and was named the Crystal Ice and Cold Storage Company; that Lewis J. Baldwin afterwards informed appellees that he could not carry out his agreement to furnish the land, because one of the tracts was involved in litigation, and that the title to the land in question was in Wright, and that they would have to get the title from him; that thereupon they went with said Baldwin to see Wright in regard to the matter, and that Wright agreed to convey to them the land, on the receipt of the money due to him; that they paid him the money, and that he conveyed the land to them. They expressly deny that the written contract between Wright and appellants was delivered to them, or that they ever had possession of it, or that they gave it to Wright; and they deny that Wright turned over to them appellants' notes.

Appellee Walter Siddons testified that, shortly before the deed was made, Lewis J. Baldwin brought to him the Wright contract, and asked him if he wanted it; that he told Baldwin that he did not think it would do him any good;

that Baldwin thereupon said: ''We would probably better have it;'' that he (Siddons) thereupon wrote the assignment that appeared on the back of the instrument, assigning it to the ice company, and told Baldwin that he might take it out and have his father and mother sign it; that after the deed was made, Baldwin brought him the notes that appellants had given to Wright.

· Before this testimony was given, appellees had introduced in evidence the original complaint filed in the cause. This complaint was filed by appellant Mary L. Baldwin, and in it she alleged that the sale of the premises to appellees was made by herself, and that the contract in reference to the matter was entered into between herself, appellees and Lewis J. Baldwin; that, by the terms of the contract, appellees were to organize the ice company, and at their own expense were to erect an ice plant; that she was to furnish the land and the flowing well, Lewis J. Baldwin was to furnish certain personal property, and that appellees were ·to issue to her and to Lewis J. Baldwin together one-third of the capital stock of the company. The competency and relevancy of this testimony is not questioned, and that it was competent is well settled in *Boots* v. *Canine* (1884), 94 Ind. 408, *Baltimore, etc., R. Co.* v. *Evarts* (1887), 112 Ind. 533, and *Cleveland, etc., R. Co.* v. *Gray* (1897), 148 Ind. 266.

With all these facts before the court, I do not concur in the view that error intervened in admitting in evidence the statements of Lewis J. Baldwin, which is relied on for the reversal of the judgment.

As a part of appellant's case, they had shown the acquisition of title to the premises by appellees through the deed from Wright, and their story of the circumstances connecting that deed with their right to a recovery, and explanatory of the circumstances under. which it was given, had been properly admitted in evidence. It was all a part of the *res gestæ* of the transaction. I think it was likewise competent for appellees to prove all the facts and circumstances, as

they claimed they existed, leading up to the taking of this deed from Wright. All the objectionable conversations related to that subject and were explanatory of it. They tended to explain whether it was as appellants' assignee or otherwise that the deed from Wright to appellees was made. They, too, were a part of the *res gestæ* of the transaction.

There was sufficient evidence also that Lewis J. Baldwin had authority to act for appellants to authorize the introduction of his statements that were in evidence. The original complaint tended to show that Lewis J. Baldwin and appellant Mary L. Baldwin were jointly interested in the contract made with appellees, by which the title and possession of the premises were acquired. There were facts in evidence from which the court might have inferred that Lewis J. Baldwin had, at the time the deed was executed by Wright to appellees, the possession of the contract of purchase under which appellants held title, and that he had been entrusted with this instrument by appellants for the purpose of delivering it to appellees, and of surrendering it to Wright upon the execution of the deed. If the court believed the testimony of Walter Siddons, Lewis J. Baldwin brought that contract to him, and it was fair to infer that he came by the possession of it rightfully from appellants. This contract, with the assignment on it as it was written by Walter L. Siddons, according to his testimony, appeared upon the occasion when the deed was executed; it was then surrendered to Wright. This assignment was signed by appellants. It is true that Wright testified that William Siddons had the contract in his possession, and that he (Siddons) delivered the contract to Wright; and if this court were sitting as a trial court, it might well conclude that this disinterested witness's testimony should be taken upon this subject; but William Siddons testifies that this did not occur, and that he did not have possession of the contract, did not deliver it to Wright, and never saw it until long after the deed was made. The court had a right to believe his testimony. It had a

right to believe that the contract was there; that it was surrendered to Wright by somebody, and that it was surrendered to him by Lewis J. Baldwin. The appellants themselves were not present, but Lewis J. Baldwin was. If the testimony of the Siddonses was to be believed—and the court did believe that the contract was surrendered at that time—nobody could have had it in possession and so delivered it but Lewis J. Baldwin. He had come from appellants to the meeting, and from the facts the court might well infer that the notes which Wright held against the Baldwins were at the time the deed was made surrendered by Wright, not to appellees, but to Lewis J. Baldwin. They were surrendered to someone. Lewis J. Baldwin was seen shortly afterwards in possession of them; and from all these facts I think the court might well have inferred that upon that occasion Lewis J. Baldwin was acting for appellants. Plainly the deed was not made pursuant to the assignment of the written contract, because that contract was assigned to the ice company, not to appellees, and the deed was made to appellees. The assignment of the contract to the ice company harmonized with appellees' theory of what the transaction was between the parties, and did not harmonize with the theory of appellants.

Nor do I concur in the view that the probative force of the original complaint, so far as it would authorize the declaration of Lewis J. Baldwin to be heard is concerned, can be affected by rebuttal evidence subsequently introduced by appellants, tending to show that the filing of the original complaint was the result of a misapprehension on the part of appellants' counsel. This evidence was not before the court when the question of the admissibility of Lewis J. Baldwin's declarations was passed upon, and if upon the state of the evidence at that time there was no error in the ruling of the court, such correct ruling could not be rendered erroneous by any evidence subsequently introduced. The question does not arise on a motion to strike out the evidence after

this rebuttal evidence was heard, and even if it did, the question, whether the testimony of appellants and their attorney would outweigh the evidentiary force and effect of the pleading that was introduced, notwithstanding the explanation offered, was for the trial court. The trial court was the sole judge, not only of the weight of the evidence, but of the credibility of the witnesses. It is not for this court to say that the trial court was bound to accept the testimony of appellants and their counsel as true, however reasonable and credible such testimony may appear to this court. *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32; *New York, etc., R. Co.* v. *Callahan* (1907), 40 Ind. App. 223; *Stephens* v. *American Car, etc., Co.* (1906), 38 Ind. App. 414; *Indianapolis St. R. Co.* v. *Coyner* (1907), 39 Ind. App. 510; *Southern R. Co.* v. *Limback* (1909), 172 Ind. 89; *Fowler Utilities Co.* v. *Chaffin Coal Co.* (1909), 43 Ind. App. 438; *Collins* v. *Catholic Order of Foresters* (1909), 43 Ind. App. 549.

In my judgment, the petition for a rehearing should be granted, and the judgment of the court below affirmed.