*M. S. Robinson*, for the appellant.

---

### THOMPSON *v.* NORTON and Others.

*A.* sold a piece of land which he held by a title-bond, and upon which he had made valuable improvements, to *B.*, assigning the title-bond, and agreeing in writing to give possession of the land and improvements on a certain future day; but before that day the improvements were destroyed by fire. *Held*, that *B.* must sustain the loss.

APPEAL from the *Marshall* Circuit Court.

WORDEN, J.—Suit by the appellees against the appellant, ·upon a note for 1,000 dollars, made by the appellant to one *Robert Rusk*, and by him indorsed to the plaintiff. Judgment for the plaintiff.

Several errors are assigned, but the only point made in the brief of counsel for the appellant, is the ruling of the Court below in sustaining a demurrer to the fourth paragraph of his answer; hence, no other point will be noticed.

The paragraph in question alleges that, at the time of making the note, *Rusk*, the payee, was in possession of certain real estate in the town of *Plymouth*, in the said county, which he held by virtue of a title-bond, before then executed to him by one *Nolan*, upon which real estate *Rusk* had erected buildings of the value of 4,000 dollars; that *Rusk* sold said real estate and improvements to the defendant, for the sum of 4,000 dollars, and asssigned said title-bond to the defendant, and agreed to deliver the pos-

session of said real estate and improvements to the defendant, on the first day of April, 1857, which agreement was in writing, and a copy set out; that, in consideration thereof, the defendant paid to said *Rusk* the sum of 700 dollars, and gave his note for 300 dollars, which has been since paid, and also gave the note sued on, and two other notes, each for 1,000 dollars; that he has paid on the contract 1,300 dollars, which is more than the full value of the real estate, without the improvements; that *Rusk* did not deliver to the defendant the possession of said real estate and improvements, on the first day of *April*, 1857, or at any other time, but on the contrary thereof, before the first day of *April* aforesaid, and while said premises were in the possession of *Rusk*, all of said improvements, of the value of 4,000 dollars, were wholly destroyed by fire, wherefore the consideration of the note has failed.

So much of the agreement between *Rusk* and the defendant as is material to the question involved, is as follows, viz:

"This agreement witnesseth, that *Robert Rusk* has this day sold to *James Thompson* the lot upon which his building is now situate," &c., (describing it). "Said *Rusk* holds the same by title-bond from one *C. Nolan*, which has been by him assigned to said *Thompson*." After several stipulations as to the consideration of the sale, specifying the notes given by *Thompson*, the agreement proceeds: "Said *Thompson* is to procure from said *Nolan* a deed for said land immediately, and so soon as he receives the same, he is to execute to said *Rusk* a mortgage thereon, to secure the payment of said notes above specified. The possession of said property is to be delivered to said *Thompson* on the first day of *April*, 1857; from that date, the said *Thompson* is to have the use and benefit of all rents accruing from said premises, and due on said leases thereafter, said *Thompson* taking the premises, and the leases of the various tenants now occupying the same, upon the same terms and restrictions contained in said leases, releasing said *Rusk* from all liability thereon after that date."

It is insisted by the appellant, that the loss of the build-

ing, under the circumstances, should fall upon *Rusk*, and that he, the appellant, cannot be required to pay more than the lot is worth without the building. He insists that the sale and transfer were not complete; that the contract was executory, as the possession was to be thereafter delivered, and the contracts with the tenants to be assigned to him; that in analogy to the rule that prevails in reference to personal property, so long as anything remains to be done by the vendor, the title does not pass from him, and he is liable for any loss or injury to the property.

The contract would seem to have been completely executed, so far as to vest *Thompson* with the same right to the property in question which *Rusk* himself had. This was a mere equitable right, and that was transferred to *Thompson* by the assignment to him of the title-bond. It was evidently contemplated by the parties that this right was vested in *Thompson*, as, in addition to what is imported by the assignment of the bond, it was stipulated that *Thompson* should immediately procure the legal title-bond from *Nolan*. The fact that the possession was not to be given until a future day, cannot be said to render the contract, thus far, executory merely. The answer does not show that *Rusk* failed to deliver possession of the lot on the day specified, but that he failed to deliver the lot "and improvements"—the latter being destroyed by fire.

We find no stipulation in the agreement, that *Rusk* was to assign to *Thompson* the contracts with the tenants of the building. Such assignment was unnecessary, in order to vest *Thompson* with the right to recover and receive the rents. 2 R. S. p. 243, §§ 7, 10.

These preliminary observations bring us to the main question in the case, viz., upon whom must the loss, under the circumstances, fall? It will be observed that there is no allegation in the answer, that the loss happened through any fault or negligence of *Rusk*, nor is there any stipulation in the agreement, that the premises were to be delivered at the time specified, in the condition they were in at the time of making the contract. The agreement specifies that *Rusk* had sold to *Thompson* "the lot upon which his

building is now situate," and that "the possession of said property is to be delivered to said *Thompson*, on," &c.

Under the circumstances, we are of opinion that the law throws the loss upon *Thompson*, the purchaser. Even on the supposition that the contract was merely executory, this, on the authorities, would be the case. It is said, in Sugden on Vendors, 1 Am. ed. p. 174, that " A vendee, being equitable owner of the estate from the time of the contract of sale, must pay the consideration for it, although the estate itself be destroyed between the agreement and the conveyance; and on the other hand, he will be entitled to any benefit which may accrue to the estate in the interim." After citing a *dictum* of the master of the rolls in a previous case, to the contrary, the author goes on as follows: " In a late case, however, where *A.* had contracted for the purchase of some houses, which were burned down before the conveyance, the loss was holden to fall upon him, although the houses were insured at the time of the sale, and the vendor permitted the insurance to expire without giving notice to the vendee—Lord ELDON being of opinion that no valid obligation could be founded on the mere effect of the accident; because, as the party, by contract, became in equity the owner of the premises, they were his to all intents and purposes. His Lordship's decision exactly accords with the doctrine of the civil law. Indeed, it is remarkable that this very case is put in the institutes."

The same question is laid down in Dart on Vendors and Purchasers, p. 117. Indeed we find nothing in the books to the contrary. The case of *Combs* v. *Fisher*, 3 Bibb, 51, cited by counsel for appellant, is not in point. There *Combs* had sold to *Fisher* a tract of land with a cabin and other improvements thereon, and promised to deliver possession thereof at a further day, "in the same situation it then was." The cabin was burned, and rails destroyed, before the day fixed for the delivery. The Court say, " The evidence in the case satisfactorily proves the promise on the part of *Combs* to deliver possession of the place in the situation it was in when *Fisher* purchased, and that the cabin was burned and the rails destroyed be-

fore possession was delivered. *Combs'* express promise, therefore, should be binding upon him. The circumstance of the cabin having been burned by accident, as is urged by *Combs*, cannot relieve him from his express undertaking; for wherever the covenant is express, there must be an absolute performance, nor can it be discharged by any collateral matter whatever." We have seen that, in the case at bar, the answer does not show any agreement as to the delivery of the premises in the condition they were in at the time of the sale. No agreement on that subject is averred or shown.

We are of opinion that the ruling on the demurrer to the answer was correct, wherefore the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed with 1 per cent. damages and costs.

.C. H. Reeve and J. Bradley, for the appellant.

H. C. Newcomb and J. S. Tarkington, for the appellees.