Metropolitan Life Insurance Company, Appellant, v. W. T. Grant Company et al., Appellees.

Gen. No. 42,562.

Heard in the second division of this court for the first district at the February term, 1943. Opinion filed February 10, 1944. Rehearing denied March 9, 1944.

FOLLANSBEE, SHOREY & SCHUPP, of Chicago, for appellant; ROBERT W. SCHUPP and FREDERIC BARTH, both of Chicago, of counsel.

WINSTON, STRAWN & SHAW, of Chicago, for certain appellee; ADOLPH & HENRY BLOCH, of New York City, and FREDERICK C. HACK and JAMES H. CARTWRIGHT, both of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

October 1, 1940 Metropolitan Life Insurance Company lodged its complaint against W. T. Grant Company, a Massachusetts corporation, Merchants National Building Corporation of Illinois, and Chicago Title & Trust Company as successor trustee, to foreclose a trust deed on premises at 3341–43 West Roosevelt road, Chicago, securing its loan of December 10,

1929 to Merchants National Building Corporation (hereinafter referred to as mortgagor) for $135,000, on which there remained due the sum of $116,100 and interest. Some eight months before the loan was made W. T. Grant Company had entered into a 30-year lease with the mortgagor for the premises at rentals graduated from $15,000 to $22,000 per annum. Thereafter through mesne conveyances W. T. Grant Realty Corporation, a subsidiary of W. T. Grant Company, acquired the fee and on February 29, 1940, before default in the mortgage, the lease was canceled and the property conveyed to the lessee. The conveyance to the Grant Company declared the intention of the parties that all leases to the premises shall be of no further force and effect and it is contended that by the delivery and acceptance of the deed, coupled with the payment of some $83,500 as consideration therefor, the provisions of the deed became a binding contract, canceling and terminating the lease and merging the two estates. During the pendency of the proceeding the court entered orders striking portions of the amended complaint which were not appealable when entered, and plaintiff therefore proceeded with the foreclosure to a final decree and sale. This appeal is taken from the decree and from the prior orders which denied plaintiff's right to enforce the continuing obligations of the lessee to pay rent in accordance with the terms of the lease.

After Grant Company acquired title it defaulted under the mortgage and offered to convey the premises to plaintiff in lieu of foreclosure. The offer was refused and plaintiff instituted foreclosure proceedings alleging, in addition to default, dissolution of the mortgagor and its insolvency, the following salient facts upon which its claimed right to enforce the continuing obligations of the lessee to pay rent in accordance with the terms of the lease is predicated: the mortgage loan of $135,000 was secured by trust deed wherein the

mortgagor conveyed the premises to Chicago Title & Trust Company as trustee, together with the rents, issues and profits thereof. As an inducement for the loan, the mortgagor submitted its application stating that the premises were leased to W. T. Grant Company for a term of 30 years at specified rentals which were graduated from $15,000 to $22,000 per annum. The lease, when made, was duly recorded. Thereafter, by warranty deed of May 7, 1937, the mortgagor conveyed its premises to West Roosevelt Road Realty Company, Inc., subject to the trust deed securing the plaintiff's loan. Later, by warranty deed dated March 31, 1938, the latter conveyed the mortgaged premises to W. T. Grant Realty Corporation, alleged to be a subsidiary of the lessee, subject to the deed in trust securing the loan made by plaintiff. Still later, by bargain and sale deed dated March 20, 1940, W. T. Grant Realty Company conveyed the mortgaged premises to W. T. Grant Company, the lessee, subject to the deed in trust securing the plaintiff's loan. Notwithstanding the expressed intention of the parties in the last conveyance that all leases covering the premises granted be merged into the fee, plaintiff alleges that the deed did not effect a merger; that a merger would impair the security for the mortgage debt and be equivalent to waste; that the lease continues as a good and valid obligation requiring the lessee thereunder to pay rent to satisfy the mortgage debt; that plaintiff relied upon the rents as security when it made its loan and that the lessee should continue liable for the rents until the covenants and agreements in the trust deed are fully performed; that without the obligation of the lessee to pay rent under its lease the premises are worth less than $50,000, whereas the mortgage debt amounts to more than $120,000; that it is necessary for the security of the mortgage debt that the lessee continue liable for rent; and that a release of its liability would seriously impair the security for the mortgage debt.

The principal relief sought, aside from foreclosure, is that the mortgaged premises be sold subject to the lease of W. T. Grant Company.

W. T. Grant Company filed its motion to strike all parts of the complaint as amended which allege facts to show that it continues to be liable for rent under its lease, on the ground that the lease was terminated and the lease estate was merged into the fee and no liability for rent existed at the time suit was commenced. The motion was sustained and the portions of the complaint as amended and the prayer for relief with respect to holding the Grant Company liable on its lease, were ordered stricken. Thereafter plaintiff had leave to file other amendments specifying some of the foregoing facts in greater detail, and the W. T. Grant Company's motion to strike the new amendments was likewise sustained by the chancellor. Following these orders the Grant Company filed its answer, the unstricken portions of the complaint as amended were referred to a master to compute the amount due plaintiff, and upon the master's recommendation a decree was entered finding $139,455.76, plus interest, due plaintiff, for which it had a valid and subsisting lien on the mortgaged premises, which were ordered sold if that amount was not paid in three days. This appeal followed.

Plaintiff takes the position that when the mortgage was made the parties intended the Grant lease to continue for its full term as security for the mortgage debt; that the rents mortgaged included the rents under the Grant lease and the mortgagee rightfully relied upon them for its security when it made the mortgage loan; that the right of a mortgagor and its assigns to use the mortgaged property is restricted to use consistent with good husbandry, or good management, which preserves the market value of the mortgaged property and keeps the security for the mortgage debt unimpaired; that for the protection of its

rights the mortgage lien on the rents is an intervening lien which prevents a merger of the leasehold estate into the reversion; and that the law of merger is controlled by equitable principles under which a merger will not be permitted if its effect would be to impair the security and render it inadequate for the mortgage debt.

The Grant Company, on the other hand, contends that when there is no assignment to the mortgagee of the lessor's interest under a lease, then, until default occurs under the mortgage, the lessor is entitled to deal with his lessee as he sees fit, raising or lowering the rent, or shortening, lengthening or canceling the term, without consultation with or permission from his mortgagee, and that in the present instance the lease was validly canceled; that nothing short of an actual assignment of the lessor's interest in the lease under the foregoing circumstances will require consultation with and consent of the mortgagee; that the mere inclusion of "rents, issues and profits" of the premises in the mortgage does not constitute an assignment by way of mortgage, or otherwise, of the rents under a specific lease, but only gives to the mortgagee the right to collect such rents as the premises are producing or may be made to produce by receivership, or otherwise, in case of default; that mere representation by a prospective mortgagor to a prospective mortgagee that the premises are presently producing a certain rental does not constitute an assignment of a lease then in existence; that as to merger, when the lessee purchased the fee for a valuable consideration and it was recited in the conveyance that it was the intention thereby to merge the leasehold estate into the fee, a complete merger was thereby effected, and all obligation to pay rent under the lease was at an end; that while the existence of an outstanding lien upon the lesser estate will usually prevent a merger, an outstanding lien by way of judgment, mortgage or

otherwise upon the greater estate, is no obstacle to a merger; and that if the mortgagee was not satisfied to rely upon the value of the land and building as security for its mortgage, then a very simple and obvious method existed by which the lessor's interest in the lease could have been obtained as additional security, namely, an assignment of the lessor's interest in the lease as collateral, with notice thereof, either constructive or actual, to the lessee.

The Grant Company submits *Central Republic Trust Co. v. Petersen Furniture Co.*, 279 Ill. App. 492, and the numerous cases cited and discussed therein, as decisive authority for the right of a landlord and a tenant to cancel a lease, despite the existence of a mortgage lien upon the premises prior to default under the mortgage. In that case, decided by the first division of the Appellate Court in this district, the owner trustees on March 10, 1926 leased the premises to defendant for a period of 15 years at a stipulated rental of $172,200, payable in graduated monthly instalments. July 31, 1926 the premises were conveyed to Ralph W. Hartwig. August 1, 1928 Hartwig made a conveyance by trust deed to the Cody Trust Company to secure a loan of $70,000. Thereafter on August 20, 1928 he conveyed the premises, subject to the trust deed, to Chicago Title & Trust Company, and on May 20, 1932 the latter conveyed the premises to Miles E. Barry. June 6, 1932 defendant entered into an unrecorded agreement with Barry by which the original lease of March 10, 1926 was canceled as of November 30, 1932 in consideration of $6,000. Defendant made no investigation of the title held by Barry other than inquiries of him and of his agents. The evidence, however, showed that the original lease was presented by Barry at the time the lease was canceled. August 1, 1932 default was made in the payment of interest under the trust deed. August 8, 1932 the Cody Trust Company made a written demand on defendant for all

rents thereafter accruing. No rent was paid, and accordingly suit was brought in assumpsit to recover the rent for September, October and November 1932, amounting to $3,000. Defendant pleaded the general issue and a special plea that on June 6, 1932 he entered into an agreement, under seal, with "the owner" of the premises whereby the lease for a consideration of $6,000 was canceled and that he thereafter surrendered possession of the premises and was therefore not indebted. Pursuant to trial the court found the issues for defendant, and plaintiff appealed from the judgment entered in favor of defendant. The question presented for decision, as stated by Mr. Justice MATCHETT, was "whether a lessee of premises which were subsequently conveyed, together with rents, issues and profits, as security for a debt may (before default) by agreement with the owner of the reversion pay the rent in advance and cancel the lease, in the absence of a notice from the mortgagee of his intention to appropriate the rents to his debt." Obviously, as pointed out by the court, the answer to that question "must depend upon the nature of the interest taken by the grantee in a conveyance of land by way of mortgage—a matter which has been the subject of conflicting decisions in many jurisdictions." The court then entered into an exhaustive review of cases touching upon the history of the law of mortgages in Illinois. It cites Pomeroy's Equity Jurisprudence, 4th ed., vol. 3, sec. 1179, p. 2784, as authority for the statement that the distinctive feature of the English law on this subject prior to the passage of the judicature acts was that the legal title to the premises by means of the mortgage conveyance was both in law and in equity transferred to the mortgagee, but that in most of the American States the law on the subject has been developed uninfluenced by the decisions of the English courts; that in some of the States where the legal theory obtains, the mortgagee takes the legal title with its incidents,

including the right to appropriate the rents, while in others where the equitable theory is adopted, the mortgage is a mere conveyance as security, the mortgagor retaining the legal right and the mortgagee being invested only with a lien on the premises conveyed as security for his debt. Reeve's Illinois Law of Mortgages and Foreclosures, vol. 1, pp. 3 to 10, is cited as describing the common law and equitable theories and the influence of the civil law upon the law of mortgages, including the borrowed conception that a mortgage is a mere lien or security, and the author states that in Illinois neither the legal theory of mortgages nor the lien theory prevails, but that the common law doctrine, as modified by equitable principles, is in force. In this connection the authority says: "The law courts, following the rule first set up in equity, also have come to recognize mortgages of all kinds to be exactly what they are—mere securities. The title may be differently regarded and differently treated in different forums, but the actual fact that, until foreclosure has been in some way had, the mortgagor has an interest in the property, is recognized at law as well as in equity. While courts have spoken and frequently do speak of the title of the mortgagee being absolute after default, they do not mean that the ownership of the mortgagee is absolute. Nowhere is it now held that, upon forfeiture, the mortgagee may sell the property, give it away, or destroy it, without reference to or consideration for any right or interest of the mortgagor. Under this doctrine a mortgage is regarded as a mere security and as no more than an incident to the debt or principal obligation; yet it confers the right to reduce the premises to possession as a means of obtaining satisfaction of the debt, and to render this right effective, ejectment will lie against the mortgagor at any time when a recovery may be had on the debt." Following a discussion of substantially every leading case on the subject in this State,

the court concluded as follows: "To sum up, it would appear the result of all the Illinois cases is that a mortgagee, so long as the mortgagor keeps the covenants of the conveyance, has nothing more than a lien upon the land for the security of his debt; that after condition broken, that is, upon failure to keep the covenants, the lien is converted into a legal estate, and the mortgagee becomes to all intents and purposes both in law and in equity the owner of a determinable fee. *Wolkenstein v. Slonim,* 270 Ill. App. 473. If this is a correct view of the situation, we think it follows that since the conditions of the mortgage had not been broken prior to the time defendant paid the rent to the holder of the equity, and since the mortgage was subsequent in point of time and therefore subordinate to the lease, defendant and the lessor had a right to make such agreement with reference to the rents by way of anticipation, or otherwise, as they pleased. While the precise question has never been decided, we think this result follows by necessary inference from the rules of law applicable, which have been heretofore set forth. The rule may seem unjust to the mortgagee. The answer is that it could have protected itself by requiring appropriate assignment and delivery of the lease with covenants." The opinion in the *Petersen* case shows a careful consideration of the law of mortgages as applied to landlords and tenants and touches upon practically every question involved in this proceeding other than merger. It is strikingly similar to the proceeding at bar in its essential aspects. In both cases there were long-term leases antedating mortgages given to secure substantial sums, which conveyed the premises, together with the rents, issues and profits, as security for the debt; and there were mesne conveyances accompanied by heavy depreciation in real estate values, followed by cancellation of the leases for a valuable consideration and subsequent default under the mortgages. *Lightcap v. Bradley,* 186

Ill. 510; *Rohrer v. Deatherage,* 336 Ill. 450, and numerous other cases cited and discussed in the *Petersen* case support the conclusion there reached as to the interest taken by the grantee in a conveyance of land by way of mortgage; and while it may be conceded that equity will not depart from rules of the common law further than equitable considerations warrant, ·the courts in Illinois, both law ·and equity, consider the mortgagee as having merely a lien on the property prior to default and regard the mortgagor as the owner until default. For this reason it would be useless to discuss decisions on the subject in other States, in some of which a different or modified theory of mortgages is recognized.

Many of plaintiff's arguments in support of its theory that the mortgaged property should be sold at foreclosure sale subject to the lease of the Grant Company and to its continuing obligation to pay rent as provided by the terms of the lease, are based on the contention that when the mortgage was made the parties intended the lease to continue for its full term, and it is urged, without authoritative support, that "The rents under it were included in the mortgage of the rents, issues and profits and of all the estate, right, title and interest of the lessor in and to the mortgaged real estate, and the mortgagee relied upon them for its security when it made the mortgage loan." Upon the theory that it had established that principle, plaintiff refers to the lessor's interest in the lease and the rents thereunder as having been specifically pledged to secure the mortgage. Counsel seek to support the contention by stressing that in the application for a loan on February 28, 1929 Merchants National Building Corporation, the mortgagor, represented to plaintiff that a lease was then in existence upon the mortgaged premises in which the Grant Company was the lessee and under which it paid the rents ultimately provided for in the lease executed more than a month

and a half thereafter. It is conceded, however, that plaintiff had an independent appraisal made of the premises which placed a value of $150,000 upon the real estate and $75,000 upon the buildings, or a total of $225,000 to secure a mortgage of $135,000. It is a well known fact that before the great depression, the extent of which no one could have foreseen, there was an unprecedented boom in real estate values and that when the lease was canceled the property had greatly depreciated in value. It is likely that when the appraisal was made plaintiff, one of the largest insurance companies in the United States, with vast experience in investing its funds, considered the property adequate security for the debt, and therefore did nothing to obtain a lien on the leasehold except to rely upon the words ''rents, issues and profits'' as giving it the security which so valuable a lease would have afforded. However, the authorities do not support the contention that the lease was pledged as security for the loan by the mere inclusion of the rents, issues and profits. In *Anderson v. Frederickson*, 252 Ill. App. 281, the mortgage provided that the rents of the premises ''shall be, and hereby are, assigned to the legal owner and holder of said note, as a part of the security therefor''; also ''all net rentals on hand from said building in amounts of $500 or more shall be from time to time applied on account of the note secured hereby, notwithstanding the expressed maturity of the instalments thereof. Monthly statements and balances of rentals shall be delivered to the legal owner and holder of said note, who shall receive the same for the purposes aforesaid.'' The receiver appointed filed a petition claiming from the agents of the mortgagor certain funds in their hands representing rents theretofore collected from the premises. The agents answered that they had negotiated a long-term lease and were entitled to commissions and had applied certain rentals against such commissions, leaving only a small

balance on hand. The trial court directed them to turn over the full rents collected. The Appellate Court, in an opinion written by Mr. Justice McSurely, reversed the trial court, citing with approval sections 670 and 976 of Jones on Mortgages, and held that even with the language included in that particular mortgage, the mortgagee obtained no lien on specific rentals, and must take the property as he found it upon the appointment of the receiver. A like conclusion was reached in *Taylor v. Osman*, 239 Ill. App. 569, where the mortgage conveyed the lands "with all rentals, rights, interests and appurtenances thereunto appertaining, waiving all right to retain possession of said premises by default in payment or breach of any covenant." There the court, after citing cases, held: "As long as the mortgagor is allowed to remain in possession he is entitled to receive the rents and profits, and even if the rents and profits are pledged to secure the mortgage debt, with the right in the mortgagee to take possession upon default, the mortgagee is not entitled to the rents until he takes actual possession or until possession is taken in his behalf by a receiver. *The mortgage does not create a lien upon rents and profits, although they be expressly pledged, to the same extent that it creates a lien upon the land.*" (Italics ours.) *Rohrer v. Deatherage*, 336 Ill. 450, *Wolkenstein v. Slonim*, 355 Ill. 306, and the *Petersen* case are to the same effect. From these considerations it would seem that the mere inclusion of the rents, issues and profits in the mortgage does nothing more than operate to deprive the mortgagor of the income from the premises subsequent to default, and then only if the mortgagee takes affirmative action to possess himself of it.

This brings us to a consideration of the question of merger. As a general rule, whenever a greater and a lesser estate are joined in the same person with no estate intervening, the lesser is merged into the

greater unless there is a clear intent that merger shall not take place, and in the absence of any evidence of intent the merger is presumed. In the case at bar the deed to the Grant Company contained a specific declaration of the intent of the parties as evidence of their intention to merge the fee and the lease. With the intention affirmatively established, the authorities in this State are in accord in holding that while a lien upon the lesser estate constitutes an intervening estate, a lien upon the greater estate does not. *Carroll v. Ballance,* 26 Ill. 9; *Hill v. Reno,* 112 Ill. 154. The rule is fully stated in 31 C. J. S., Estates, sec. 123b, accompanied by the citation of numerous cases. Exception to the foregoing rule is that no merger will be permitted to the detriment of the holders of an intervening estate, and some of the cases cited by plaintiff follow the application of this exception. In *Hooper v. Goldstein,* 336 Ill. 125, the intervening estate was a lien upon the certificate of sale, the lesser estate, claimed by the defendant therein to be merged into the fee secured by purchase of the equity. In *Chicago Title & Trust Co. v. Kesner,* 296 Ill. App. 187, the intervening estate consisted of a mortgage of $400,000 upon the leasehold, the lesser estate, preventing its merger into the fee. This was a purchase money mortgage given when the lease was purchased and indicated a clear intention not to merge and destroy the lease. From the decisions cited and discussed by plaintiff it appears that "an intervening estate" is an estate coming between the lesser estate and the greater estate— a lien upon the lesser estate, and in such cases the courts hold that the merger must be prevented to avoid destruction of the lien. In the case at bar, however, the lien in question is upon the fee, the greater estate. The fee itself is security for the mortgage loan and a merger will not affect the lien, for it will continue to have as great a measure of security as before, namely, the land and the rents, issues and profits de-

rived therefrom. No attempt has been made to lessen this security. In cases where a lease is specifically assigned to the mortgagee, as it could have been in this instance if plaintiff had insisted upon it, the mortgage itself becomes a lien upon the lesser estate as well as the greater estate, and thereby becomes an intervening estate. Plaintiff cites no cases holding that a lien solely upon the greater estate will prevent the merger and extinction of the lesser estate.

Much of plaintiff's argument in support of its various theories is founded upon general equitable principles and maxims and the citation of cases too numerous to discuss within the confines of this opinion. If plaintiff were able to demonstrate that the Grant lease constituted security for its mortgage to the same extent as if the lessor's interest in that lease had been specifically assigned as security, many of the points urged could be readily dispensed with; but in the view we take its failure so to do renders many of the principles and maxims, while otherwise sound, inapplicable. Upon the assumption that this particular lease was in fact mortgaged to it as additional security, plaintiff argues that the cancellation thereof constituted an impairment of its security, or waste. However, if we are correct in our conclusion that the lease was not assigned under the trust deed and did not constitute part of the security for plaintiff's indebtedness, it would logically follow that no waste was committed and that plaintiff's security was not legally impaired by the cancellation and merger of the lease. Moreover, "waste" is generally limited to physical damage to the property, and no such question arises in this proceeding.

Considerable argument is devoted in plaintiff's brief to the general equities of the case, and it is suggested that the Grant Company was guilty of bad faith toward plaintiff. The loan was made pursuant to plaintiff's own appraisal, with which the Grant Company

had nothing to do. While the record shows nothing as to the losses that may have been suffered by the Grant Company in the operation of the store, it does appear that it remained there as a tenant for a number of years and ultimately purchased the equity for $83,500. The business was so bad that the company elected to abandon its entire investment with all the promotional work done and expenses incurred in connection therewith, and offered to convey the premises without charge to plaintiff. Obviously the losses, both to the Grant Company and plaintiff, resulted from miscalculation as to the future of the territory rather than from any misconduct on the part of either. As pointed out in the *Petersen* case, ''The rule may seem unjust to the mortgagee. The answer is that it could have protected itself by requiring appropriate assignment and delivery of the lease with covenants.''

We are of opinion that the decree and orders of the circuit court were proper, and they are therefore affirmed.

*Decree and orders affirmed.*

SCANLAN and SULLIVAN, JJ., concur.