EDWIN L. TIDD AND PATRICIA TIDD *v.* EUGENE E. STAUFFER AND MARY ALICE STAUFFER.

[No. 1-873A142. Filed March 20, 1974. Rehearing denied April 23, 1974.]

*Hollingsworth, Martin & Buchanan,* of Lebanon, for appellants.

*Parr, Richey, Obremsky, Pedersen & Morton,* of Lebanon, for appellees.

LOWDERMILK, J.—Plaintiffs-appellants (Tidds) commenced this action for a judgment ordering defendants-appellees (Stauffers) to convey to appellants a warranty deed to real estate purchased by appellants under a conditional sales contract for land upon appellants paying to appellees the balance due under the contract, pursuant to a prepayment clause.

Stauffers responded by filing an answer and cross complaint which alleged that the conditional sales contract had been terminated as a result of certain breaches by Tidds. These alleged breaches were the failure to pay taxes in the years 1968, 1969, and 1970, failure to properly insure the property, and a prohibited assignment, all of which were contrary to the terms of the conditional sales contract. Stauffers asked that the contract be terminated and that the monies paid thereunder be set off as liquidated damages. Damages were also asked for breach of contract and fraud under subsequent paragraphs.

Trial was had to the court, with the court finding against Tidds and for Stauffers. The court declared the contract to be terminated as the result of the breaches alleged by Stauffers in their cross complaint and adjudged that all monies paid under the contract would be treated as liquidated damages. The court found against Stauffers on their paragraphs alleging breach of contract and fraud.

A motion to correct errors was timely filed and overruled by the court.

On October 24, 1963, Stauffers sold the real estate in question (101.3 acres) to Tidds on a conditional sales contract with a purchase price of $39,000. The contract contained certain provisions, including a provision that the purchaser, Tidds, was to assume all real estate taxes payable in 1964 and thereafter, Tidds were to keep the property properly insured, and Tidds could not assign or sell, pledge or mortgage or transfer any interest in the property without the written consent of Stauffers. Under paragraph 8 of the contract, entitled "Vendors' Remedies on Purchasers' Default" it was stated that in the event of a default of any of the terms of the contract, Stauffers could remove Tidds from the property and at their option, cancel or terminate the agreement. The contract stated that said remedy may be invoked without notice or demand, and notice and demand were expressly waived by the purchasers. A warranty deed and copy of the contract were placed in escrow with the Boone County State Bank.

In 1967 Tidds agreed to sell to Barrickmans a portion of the property. No notice was given to Stauffers of this arrangement and no written permission was given by the Stauffers. Barrickmans agreed to pay $56,000 for the portion which they were buying (87 acres.)

In April, 1971, the Stauffers became aware of a delinquent tax liability on the property, representing taxes unpaid for the years 1968, 1969, and 1970. The Stauffers contacted Tidds by letter and demanded that they make proper payment of these back taxes. Time was extended through various letters until June 10, 1971, at which point Stauffers considered the contract terminated. On June 30, 1971, a letter was sent to the Boone County State Bank wherein it was stated that due to certain defaults discussed therein the Stauffers were terminating the contract and asking that the contract and deed

be returned to them from escrow. The bank returned the warranty deed immediately. On July 14, 1971, a letter, which included a copy of the letter that was sent to the bank setting out the reasons for the termination, was sent to the Tidds by the Stauffers, informing them of the defaults and of the cancellation and termination of the contract. On July 15, 1971, the Tidds cancelled the insurance that they had taken out on the property. In August of 1971 the Stauffers paid certain back taxes of about $70.00. However, they also were credited over $90.00 for a mistake that had been made in the valuation of the land in the earlier years.

In May of 1971 the Tidds offered to pre-pay the entire balance of principal and interest due under the contract pursuant to a prepayment clause. However, Stauffers declined the arrangement due to tax reasons. In November of 1971 the Tidds tendered to the Stauffers about $1,396 as an installment on the principal and interest then due under the contract. This tender was refused by the Stauffers, as they were treating the contract as having been terminated. On January 13, 1972, the Tidds again tendered a sum, $24,-214.06, in full payment of the contract, and demanded a warranty deed. This tender was also refused for the reason that the contract had been deemed terminated by the Stauffers.

In their brief Tidds present four issues upon which they rely as errors. We shall combine and review the same as hereinafter set out in this opinion.

Tidds first point out that forfeiture of a contract is considered a harsh remedy and is not favored in equity. Construction of a contract to work a forfeiture is not a favorite of the law and the principles of compensation where fair dealing and good conscience seem to demand must be followed. See, *Rembold Motors, Inc.* v. *Bonfield* (1973), 155 Ind. App. 422, 293 N.E.2d 210. Tidds contend that the Stauffers waived their right to terminate the contract when they accepted late, overdue payments of

the taxes on June 15, 1971. The approximate $2,000 in delinquent and overdue real estate taxes was discovered prior to this time but no forfeiture was declared upon this discovery. It is Tidds' position that by accepting late payments Stauffers could not declare a forfeiture for default which they discovered after the June 15th date without giving notice to the Tidds of their intention to insist upon a forfeiture if the defaults were not cured within a reasonable time.

Stauffers contend that the failure of consideration by not paying the taxes in question created a breach from which forfeiture can lie. Stauffers point out that they corresponded with the Tidds, made several demands that the taxes be paid and asked for proof of payment no later than June 10, 1971, and that there would be no extension after that date, and if payment was not made by that time, then the contract would be cancelled; that this contract expressly stated that time was of the essence in the agreement.

Tidds insist that Stauffers have not been injured in any way by the alleged breaches of the contract. Tidds point out that Stauffers have in fact agreed to let Barrickmans continue buying the property, thus indicating that the Stauffers did not feel that their contract and the security thereunder was in any danger as a result of this re-sale. The real problem seems to be that the Stauffers were not informed of the second transaction by Tidds. Tidds point out that the compensation asked here was really a mere payment of money and a court of equity will not cancel a contract under that type of a situation, but will relieve the debtor upon his payment of the principal and interest; that they have offered on two different occasions to pay the principal and interest due on the contract of purchase.

Tidds urgently contend that the case of *Skendzel* v. *Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641 controls and is determinative of the case at bar. *Skendzel, supra,* holds, basically, that a conditional land contract creates a vendor's lien to secure the unpaid balance under the

contract. This lien is quite analogous to a mortgage. The court, in *Skendzel*, held further that any enforcement by the lienholder should be through foreclosure proceedings rather than through the cancellation or forfeiture of a contract. It must be remembered the *Skendzel* decision does not rule out a forfeiture in a land contract sale, but limits such forfeiture to cases of absconding or abandoning vendees, or where a minimum amount had been paid, or where the vendor seeks to retain possession to pay the taxes, insurance, and insure that the property is kept up properly. Tidds urge that they do not fall under any of the exceptions noted above in that they are not abandoning, are not absconding, and that they have paid over $16,000 on the principal and that any breaches they may have made cannot be said to endanger the security of the sellers (Stauffers).

Tidds point out that the result of the trial court's decision granting forfeiture creates an unconscionable result on the Tidds. They point out that Stauffers now regain possession of the entire property, 101 acres, are entitled to keep the $16,000 which the Tidds had paid on the principal, and are, in effect, being able to take over a more beneficial contract wherein they will continue selling to the Barrickmans 87 acres for about $56,000 and retain 14 acres of the original tract contracted to be sold to Tidds. If this be permitted the Stauffers will receive appreciation in value on the real estate which Tidds contend is improper under *Skendzel, supra*. Tidds further contend that the liquidated damages—the amount paid under the contract by Tidds—is disproportionate to the loss actually suffered by Stauffers and is penal rather than compensatory.

Stauffers contend that *Skendzel, supra*, does not apply, as the case at bar does not involve a forfeiture and that Stauffers treated the contract as terminated when taxes were not paid in full and that the contract was fully terminated in June of 1971. However, it is our opinion that the import of the judgment in the trial court results in a forfeiture of the con-

tract, even though the judgment does not state that term specifically.

It further appears to this court that when the findings and judgment of the trial court were made and entered of record and the motion to correct errors was filed and overruled that the matter of forfeiture of a land purchase contract was controlled by the law which was being construed at that time as argued in their briefs by Stauffers.

However, *Skendzel, supra,* was handed down by our Supreme Court on October 4, 1973, which opinion completely revolutionized the law of forfeiture under conditional land contracts and which opinion now binds this court in passing upon such matters.

It is our opinion that the evidence most favorable to the appellees supports the trial court's finding that breaches of the conditional land sales contract did, in fact, exist. The evidence also supports the trial court's decision that these breaches warrant a termination of the contract. However, the relief and remedy granted by the trial court are, in our opinion, in error, pursuant to the holdings in *Skendzel, supra.*

The court, in *Skendzel,* was faced with basically the same situation that is presented to us in this case. In *Skendzel* a land sales contract had been entered into and certain breaches had been precipitated by the vendee. The contract was of the same nature as the contract in the case at bar, in that certain down payments were to be made with the balance to be paid in installments. The vendees had a right to prepay. The forfeiture/liquidated damages provision was substantially the same as in the case at bar in that upon default and without notice the contract could be terminated with all monies paid thereunder to be retained by the vendor as liquidated damages. The result of a forfeiture would be the same in *Skendzel* as in the case at bar, as can be seen by the following quotation from *Skendzel:*

"If forfeiture is enforced against the defendants, they will forfeit outright the sum of $21,000, or well over one-half the original contract price, as liquidated damages *plus possession*." (Their emphasis.)

In the case at bar Tidds will lose over $16,000 which is a substantial portion of the contract price of $39,000, plus possession.

The court in *Skendzel* reiterated the fact that forfeitures are disfavored by the law and that equity will intercede to grant relief which is equitable to all the parties. The court in *Skendzel* held that to declare a forfeiture in that case would result in substantial injustice to the vendee and it is our opinion that the same reasoning applies in the case at bar.

The court, in *Skendzel*, said:

> "Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee. Payments are generally made in periodic installments. *Legal* title does not vest in the vendee until the contract terms are satisfied, but equitable title vests in the vendee at the time the contract is consummated. When the parties enter into the contract, all incidents of ownership accrue to the vendee. *Thompson* v. *Norton* (1860), 14 Ind. 187. *The vendee assumes the risk of loss and is the recipient of all appreciation* in value. *Thompson, supra.* The vendee, as equitable owner, is responsible for taxes. *Stark* v. *Kreyling* (1934), 207 Ind. 128, 188 N.E. 680. The vendee has a sufficient interest in land so that upon sale of that interest, he holds a vendor's lien. *Baldwin* v. *Siddons* (1910), 46 Ind. App. 313, 90 N.E. 1055, 92 N.E. 349.
>
> . . . The vendor 'has, in effect, exchanged his property for the unconditional obligation of the vendee, the performance of which is secured by the retention of the legal title.' *Stark* v. *Kreyling, supra,* 207 Ind. at 135, 188 N.E. at 682. The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. *Realistically, vendor-vendee should be viewed as mortgagee-mortgagor.* To conceive of the relationship in different terms is to pay homage to form over substance. . . ."

(Our emphasis.)

The court went on to hold that the land sale contract created a mortgage relationship between the vendor and the vendee, with the vendor being, in effect, an equitable mortgagee. The court also quoted other jurisdictions and held that the equitable mortgagor has an equity of redemption and the equitable mortgagee has the correlative right of foreclosure. The court discussed the similarity between the conditional land contract and a mortgage as follows:

> "A conditional land contract in effect creates a vendor's lien in the property to secure the unpaid balance owed under the contract. This lien is closely analogous to a mortgage—in fact, the vendor is commonly referred to as an 'equitable mortgagee." *D.S.B. Johnston Land Co.* v. *Whipple, supra; Harris* v. *Halverson, supra.* In view of this characterization of the vendor as a lienholder, it is only logical that such a lien be enforced through foreclosure proceedings. Such a lien '[has] all the incidents of a mortgage' (*D.S.B. Johnston Land Co.* v. *Whipple, supra,* 234 N.W. at 61), one of which is the right to foreclose."

The court further held that foreclosure of land sales contracts is undeniably comprehended by Rule TR. 69C IC 1971, 34-5-1-1, which deals with the foreclosure of liens upon real estate and the basic foreclosure statute, which is IC 1971, 32-8-16-1 (Burns § 3-1801, 1968 Repl.). The court summarized its position on judicial foreclosure of land contracts as follows:

> ". . . The vendor's interest clearly constitutes a 'lien upon real estate' and should, therefore, be treated as one. * * * We believe there to be great wisdom in requiring judicial foreclosure of land contracts pursuant to the mortgage statute. Perhaps the most attractive aspect of judicial foreclosure is the period of redemption, during which time the vendee may redeem his interest, possibly through re-financing."

In the case at bar it must be remembered that Tidds have on two occasions expressed an interest in redeeming their interest in the property and have at one point made a full tender of the remaining purchase price due on the contract.

We have heretofore stated the exceptions which Justice Hunter enumerated in which forfeiture would be an appro-

priate remedy and it is our opinion that the Tidds would not fall under any of those exceptions. Justice Hunter concluded that forfeiture is only appropriate under certain circumstances where it was found to be consonant with the notions of fairness and justice under the law. In the case at bar as in *Skendzel* forfeiture would not be consonant with fairness and justice.

Again, in *Skendzel,* Justice Hunter stated:

> *"In other words, we are holding a conditional land sales contract to be in the nature of a secured transaction, the provisions of which are subject to all proper and just remedies at law and in equity."* (Their emphasis.)

The court went on to say that courts on appeal have the undeniable right to grant the appropriate equitable relief. In *Skendzel* the case was reversed and remanded with instructions to enter a judgment of foreclosure pursuant to Rule TR. 69C and the mortgage foreclosure statute. Under the guidelines set out in *Skendzel* and for the foregoing reasons this cause is reversed and remanded with instructions to the trial court to enter a judgment of foreclosure on the vendors' (Stauffers) lien pursuant to Rule TR. 69C and the mortgage foreclosure statute (IC 1971, 32-8-16-1 (Burns Ind. Stat. § 3-1801, 1968 Repl.)) as modified by Rule TR. 69C. Said judgment shall include an order for the payment of the unpaid principal balance due on said contract, together with any interest accrued to the date of payment pursuant to the terms of the contract. Said judgment to draw the statutory rate of interest from and after the date of entry. Vendors (Stauffers) are ordered and directed to execute a good and sufficient warranty deed to vendees (Tidds) upon full payment of the contract, together with interest. The order may also embrace all other proper and equitable relief that the court deems to be just, including the discretion to issue a stay of the judicial sale of the property, all pursuant to the provisions of Rule TR. 69C. Such order shall be consistent with the principles and holdings set out within this opinion.

Reversed and remanded with instructions.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 308 N.E.2d 415.