Michael L. OLES and Florence M. Oles, Defendants-Appellants,

v.

Gerald G. PLUMMER and Janet Dee Plummer, Plaintiffs-Appellees.

No. 1–682A123.

Court of Appeals of Indiana, First District.

Jan. 27, 1983.

innumerable collateral issues. 82 N.E. at 721.

Arthur J. Sullivan, William S. Ayres, Steers, Sullivan, McNamar & Rogers, Indianapolis, for defendants-appellants.

Thomas A. Whitsitt, Peyton, Giddings, Whitsitt, Baker & McClure, Lebanon, for plaintiffs-appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendants-Appellants Michael L. Oles and Florence M. Oles (Oles) appeal a judgment entered in the Montgomery Circuit Court in which the court granted plaintiffs-appellees Gerald G. Plummer's and Janet Dee Plummer's (Plummers) suit for specific performance on a conditional land sales contract and denied Oles' counterclaim seeking forfeiture of the contract.

We affirm.

### STATEMENT OF THE FACTS

The facts most favorable to the decision show that on May 1, 1972, Oles entered into a contract to sell 14.5 acres of farm land in Boone County to Plummers. The sale price was $11,600, $1,000 down payment and monthly payments of $100, which payments apparently included 7% interest which was computed semi-annually. The contract was a conditional sale contract printed on an "approved Standard Form" Land Contract adopted by the Indiana Real Estate Association, Inc., and it contained the usual clauses requiring the buyer to pay the taxes, insurance, assessments, to make repairs, forbidding assignment, and prohibiting the commission of waste. Also, it contained a forfeiture clause and a "time is of the essence" payment clause. The payments, which commenced in June, 1972, were met by Plummers, more or less, but irregularly, and at the end of three years they were in arrears only $400. By October 3, 1978, the date of the last payment, they were in arrears only $200. At that point Plummers

had paid $8,500 on the contract and the unpaid balance on the principal was $8,056.15. There was evidence that Plummers demanded a statement of a payoff balance, but Oles refused to give one. In any event, no further payments were made until November, 1980, and the contract was in default by Plummers.

On November 3, 1980, Oles' attorney sent Plummers a letter to which he attached a schedule of the payments made, and demanded the payoff balance of $9,431.96. This amount included the $8,056.15 plus subsequently accrued taxes, ditch assessments and interest. The letter also included a demand for payment of $440 for personal property allegedly damaged or taken by Plummers and not connected with the real estate contract. The letter concluded with the statement, "We are giving you until November 15, 1980, to pay the contract in full. If we do not hear from you within the ten (10) day period we will institute our suit to cancel and terminate the contract to purchase this real estate."

Plummers called the attorney the next day and after making and cancelling meetings, the parties met on December 3, 1980. Plummers tendered Oles a certified check for $9,431.96, which they had obtained by financing, but Oles refused to accept it. Plummers refused to pay the $440 demand. Oles testified that they refused to accept the check because Plummers had voided the contract. There was contradictory evidence about payment of taxes and the commission of waste. There was evidence that Plummers had agreed to resell the property but only on condition they could get a deed from Oles.

Although the contract was in default, and demands were made by Oles for payment, no evidence exists of any effort by Oles to terminate the contract until the November 3, 1980 letter. Oles' own witnesses testified that both parties wanted the property paid off, and Oles merely demanded that Plummers comply with the contract. Further evidence disclosed that there was a rapid rise in farm prices, rental, and interest rates in Boone County during the eight years the contract was in effect.

Upon Oles' refusal to accept the check, Plummers brought suit for specific performance on January 7, 1981, and deposited with the court the sum of $9,431.96. Oles filed their answer alleging breach of contract, and further filed a counterclaim seeking forfeiture of the contract; damages for occupancy; $200 for limestone and fertilizer; $200 for a wagon; $240 for equipment and attorney fees.

The trial court, in lengthy findings of fact and conclusions of law, granted specific performance to Plummers under the doctrine of *Skendzel v. Marshall,* (1973) 261 Ind. 226, 301 N.E.2d 641, and denied Oles' counterclaim in its entirety.

## ISSUES

The issues which Oles present for review consist of challenges that certain findings of fact and conclusions of law are not supported by the evidence or are contrary to the evidence. We shall group them for discussion as follows:

Issue I. Findings of fact Nos. 17, 18, and conclusions of law No. 1 and 2, which concern the applicability of *Skendzel v. Marshall.* They are as follows:

Finding No. 17. That of the sum of $8,500 plaintiffs have paid, approximately $4,500 has been applied to interest and approximately $4,000 to principal as of the date of the last payment.

Finding No. 18. That the payments of such amounts constitute substantial payment.

Conclusion No. 1. That the remedy of forfeiture is too harsh a remedy to be applied against the plaintiff on the above facts.

Conclusion No. 2. That the case of *Skendzel v. Marshall* applies to these above facts and governs this case.

Issue II. Findings of fact Nos. 8, 19, and 20 relate to waiver and laches. They are as follows:

Finding No. 8. That defendants failed to take any affirmative steps to declare the contract forfeited or to foreclose or

to otherwise terminate or cancel that contract for more than two years after the date of the last payment.

Finding No. 19. That defendants failed to take action to minimize their damages and the Court does not believe all the testimony supporting the proposition that the fair rental value of the land during plaintiffs' possession amounted to $12,000.

Finding No. 20. That while plaintiffs breached their side of the contract defendants at least tacitly consented to such breaches, went along with plaintiffs' delays in payments and failure to pay taxes and assessments and cannot now be heard to complain of plaintiffs and take advantage of a default they allowed to continue for such a long time.

Issue III. Findings of fact No. 22 and conclusion of law No. 5.

Both finding No. 22 and conclusion No. 5 found that in view of the disposition of the case the issue of whether plaintiffs committed waste was moot, and if not moot, the defendants had not carried their burden of proof.

Issue IV. Conclusion of law No. 6 is as follows:

That defendants are not entitled to attorneys fees because, although plaintiffs were in default, they were required to bring suit on the contract to obtain delivery of the deed.

## DISCUSSION AND DECISION

*Issue I. Skendzel v. Marshall*

At the onset we find that the trial court's finding No. 17 is supported by the evidence. As of October 3, 1978, the date of the last payment, our calculation reveals that $3,543.85 was applied to principal. Such amount is within the broad connotation of the term "approximately" when the trial court found that approximately $4,000 had been applied to principal. In finding No. 18, the total payments amounted to 30.55% of the contract price as of October 3, 1978, and such amount is substantial and not minimal under *Skendzel.* Even Oles' calcu-

lation reveals payment to principal of $2,168.04, or 18.6% by November, 1980, after the numerous add-ons. That amount also is substantial, and not minimal.

■ The court in *Skendzel, supra,* struck down strict forfeiture in land sales contracts and held that such a contract was a security interest for the unpaid balance of the purchase price. Judicial foreclosure under the mortgage foreclosure statutes is required. Relative to the matter of redemption the *Skendzel* court said

"Perhaps the most attractive aspect of judicial foreclosure is the period of redemption, during which time the vendee may redeem his interest, possibly through refinancing."

261 Ind. at 239, 301 N.E.2d 641. The *Skendzel* court, however, excepted from its holding breaches of contract in the following situation: (1) abandonment of the property, (2) an absconding vendee, (3) where a minimal amount is paid on the contract at the time of the default by the vendee and he seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the property, and (4) under circumstances in which it is found to be consonant with notions of fairness and justice under the law.

*Skendzel* involved a payment by vendee of $21,000 on a $36,000 contract. The doctrine announced in *Skendzel* was applied by the court in *Tidd v. Stauffer,* (1974) 159 Ind.App. 570, 308 N.E.2d 415, where $16,000 or 41% of the total amount due had been paid on a $39,000 contract. In *Goff v. Graham,* (1974) 159 Ind.App. 324, 306 N.E.2d 758, the court permitted a forfeiture where only $2,512 had been paid on a $61,750 contract and substantial waste and deterioration of the property was present. A like result was reached in *Donaldson v. Sellmer,* (1975) 166 Ind.App. 60, 333 N.E.2d 862, when abandonment and severe deterioration of the property was involved even though substantial payments were made.

■ Oles' reliance upon *Goff* and *Donaldson* is not tenable as both cases are distinguishable on their facts from the case at

bar. Here, at the time of default, October 3, 1978, 30.55% had been paid, and the court found no waste. The balance due was tendered prior to any effort to regain possession. 30.55% or even 18.6% of the purchase price is not a minimal payment under *Skendzel.* We hold that the rule in *Skendzel* is applicable, and Oles' remedy upon default was judicial foreclosure, giving the Plummers a right of redemption. The balance demanded by the Oles had been paid into court, and therefore, the judgment was correct.

### Issue II. Waiver and laches

■ Oles refer us to no evidence prior to November 3, 1980, which indicates that any effort to forfeit the contract and regain possession of the property was made by them. The November 3rd letter itself was only a demand for payment. Other testimony indicates demands for payment but also acceptance of late payments.

In *Gorbett v. Estelle,* (1982) Ind.App., 438 N.E.2d 766 (trans. denied), a case very similar to this one, we held that

"Where a party by his own indulgence has accepted late payments, he has waived the right to terminate a contract which provides that the time of payment is of the essence. [Citations omitted] ... The Gorbetts would be required to give the Estelles personal notice that all future payments must be timely made before Gorbetts could invoke forfeiture of the contract."

438 N.E.2d at 769. In reality this issue is no longer relevant with our holding that the rule in *Skendzel* governs. Oles' sole remedy was foreclosure. In any event, the trial court was justified in finding laches and waiver under the facts. Further we fail to see the relevance of the $12,000 fair rental value, which evidence the court did not believe. Any bargain belonged to the owners, the Plummers, and if *Skendzel* applied, any rental valuation or sale valuation was totally irrelevant because Oles' remedy was judicial foreclosure, pay themselves, and the overplus would belong to Plummers.

### Issue III. Waste

■ The letter of November 3, 1980, did not raise the question of waste, and that issue arose for the first time in the counterclaim. Acts of waste in property which is security for a debt is relevant only where it impairs the security. *Florida Bahamas Lines, Ltd. v. The Steel Barge "Star 800" of Nassau,* (5th Cir.1970) 433 F.2d 1243; *Gardner v. W.M. Prindle & Co.,* (1932) 185 Minn. 147, 240 N.W. 351; *Cornelison v. Kornbluth,* (1975) 15 Cal.3d 590, 125 Cal.Rptr. 557, 542 P.2d 981, *Nusbaum v. Shapero,* (1930) 249 Mich. 252, 228 N.W. 785; *Metropolitan Life Ins. v. W.T. Grant Co.,* (1944) 321 Ill.App. 487, 53 N.E.2d 255; 20 I.L.E. *Mortgages* § 141 (1959); and 59 C.J.S. *Mortgages* § 334 (1949). Here, the tender of the full balance was made, and even paid into court before the question of waste was raised in the counterclaim. No possible harm could have resulted to Oles because of any waste. In any event the evidence on waste was conflicting, and the matter of credibility is reserved for the trial court. *Arnold v. Dirrim,* (1979) Ind.App., 398 N.E.2d 442.

### Issue IV. Attorney fees

■ The contract contained no provision for the payment of attorney fees; and attorney fees generally are not allowable unless provided for by statute, prior written agreement, or by stipulation. *Wilson Leasing Company v. Gadberry,* (1982) Ind.App., 437 N.E.2d 500.

For the above reasons, this cause is affirmed.

Affirmed.

ROBERTSON, P.J., concurs.

RATLIFF, J., concurs with opinion.

· RATLIFF, Judge, concurring.

The evidence in this case establishes that the Plummers had paid $3,543.85 principal on a contract price of $11,600.00, or 30.55% of the total price. I agree that this is a substantial and not a minimal amount under *Skendzel v. Marshall,* (1973) 261 Ind. 226, 301 N.E.2d 641, and its progeny. For-

feiture, therefore, was inappropriate and properly was disallowed.

However, the majority's statement that had Plummers paid but $2,168.04, or 18.6% of the purchase price, as contended by the Oles, such was a substantial rather than a minimal payment is unnecessary dictum likely to add confusion to the law. The issue before us is whether 30.55% of the purchase price is a substantial payment depriving the sellers of the remedy of forfeiture. We have said it was. No further statement was necessary. Whether a payment of 18.6% of the purchase price is so substantial as to preclude forfeiture should await determination in a case presenting that specific question.